## CHIAVAROLI v. UNION BAG & PAPER CO.

(Supreme Court, Appellate Division, Third Department.  March 10, 1909.)

1. **MASTER AND SERVANT (§ 116\*) — INJURIES TO SERVANT — SCAFFOLDS—SUFFICIENT MATERIAL—DUTY TO FURNISH.**

    A master is bound to furnish proper and sufficient material to construct a scaffold, though he is not liable at common law for the manner of its construction, if constructed by a servant according to his own judgment.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.\*]

2. **MASTER AND SERVANT (§ 116\*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLD—NEGLIGENCE.**

    Defendant provided certain jacks to be used in constructing a scaffold, the braces of which were intended to be held in place by thumbscrew pressure. The jacks were not intended for heavy work, and while they were supporting a load of nearly a ton the scaffold collapsed and plaintiff was injured. The jacks did not break, but one of them slipped out from under its load, because the thumbscrew pressure was insufficient to hold the braces attached to the jacks, which were not placed in a vertical position. *Held*, that the jacks were unsuitable for the construction of the scaffold, and that defendant was negligent in furnishing them for that purpose.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.\*]

3. **MASTER AND SERVANT (§ 201\*)—INJURIES TO SERVANT—FELLOW SERVANTS.**

    Where a master negligently permits an unsafe implement or appliance to be used, it is no defense to an action for injuries to a servant resulting therefrom that a fellow servant used the appliances unskillfully or improperly; concurring negligence of a fellow servant being no excuse for the master's negligence.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 518–523; Dec. Dig. § 201.\*]

4. **MASTER AND SERVANT (§ 270\*)—INJURIES TO SERVANT—EVIDENCE.**

    In an action for injuries to a servant, caused by the collapse of a scaffold constructed on jacks, evidence that thumbscrews used to tighten the jacks to the connecting timbers gradually loosened and failed in their purpose was admissible.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 920–923; Dec. Dig. § 270.\*]

Appeal from Trial Term, Washington County.

Action by Vincenzo Chiavaroli against the Union Bag & Paper Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Arnold & Sherman (J. A. Kellogg, of counsel), for appellant.

King & Angell (Edward M. Angell, of counsel), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COCHRANE, J. The plaintiff, an employé of the defendant, was injured by the collapse of a scaffold, and brings this action to recover damages because of the alleged negligence of the defendant. His complaint was dismissed at the trial on the ground that he had established no negligence on the part of defendant.

The scaffold stood on a floor of a building which defendant was constructing for a pulp or paper mill. The top of the scaffold was about seven feet from such floor and a few feet underneath the rafters of the building. The purpose of the scaffold was to enable the workmen to fasten to the rafters crossbeams from which would be suspended the shafting of the machinery to be placed in the mill. The floor of the scaffold consisted of planks 16 feet long, resting on two timbers 13 feet long, one at each end of the planks. Each of those two timbers was supported at either end thereof by a device termed in mechanical nomenclature a "jack"; there being, therefore, one of these jacks at each corner of the scaffold. These jacks were ready-made and portable contrivances designed to act as supports for scaffolds wherever they could be utilized for that purpose, but were not designed to support very heavy weights. They were in shape like a capital letter "A"; the legs thereof approaching each other at the top, where they clamped the connecting timbers above mentioned, which they supported, and on which timbers the floor of the scaffold was placed. There was also a brace extending from each jack diagonally upwards to such connecting timber and clamping thereto. These clamps were tightened and adjusted by means of thumbscrews. The scaffold had been constructed the day before the accident by carpenters in the employment of the defendant. Plaintiff was a common laborer, and had nothing to do with its construction, and so far as the evidence shows was unaware of its insecurity. At the time of the accident plaintiff had been directed to go upon the scaffold and assist in fastening said beams to the rafters. Such beams were then upon the scaffold, and there were also two men thereon, and various materials. The jury might have found from the evidence that the jacks were at that time supporting a load of nearly a ton. As plaintiff approached the scaffold it collapsed. One of the witnesses who was on the scaffold when it fell testified that he saw the clamp which connected one of the diagonal braces with the timber to which it was attached sliding along the timber. Evidently the thumbscrew did not hold the clamp with sufficient firmness to the timber to withstand the weight on the jacks. It also appears that the jacks were not placed vertically, but slanted outwardly at the bottom. Obviously this had a tendency to weaken the scaffold by creating a greater strain on the thumbscrew pressure.

Independently of statutory provisions, a prima facie case of negligence against defendant was established. At common law, if a servant constructed a platform according to his own judgment, the master was not liable for the manner of such construction, providing he had furnished suitable materials therefor. Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630. The duty, however, rested on the master to furnish proper and safe material for the construction thereof. Madden v. Hughes, 185 N. Y. 466, 470, 78 N. E. 167; Rich-

ards v. Hayes, 17 App. Div. 422, 45 N. Y. Supp. 234. The plaintiff produced evidence to the effect that these jacks were not suitable for heavy work, such as that to which they were being applied, and that they were insufficient to sustain in safety such a load as was superimposed upon them at the time of the accident. From this evidence the jury might have found that the defendant failed in its duty toward its employés in providing unsuitable, weak, and insufficient materials or instrumentalities for the construction of the scaffold. The jacks were provided by the defendant for use in the construction of this scaffold. There is no question but what, in so using them, the carpenters who constructed the scaffold were fulfilling the purpose of the defendant, and using the means and methods which it had provided and indicated for that purpose. It is true the jacks did not break; but one of them slid out from under its load because the thumbscrew pressure was insufficient to hold in place the diagonal brace when the jack was not placed vertically. But their tendency to do so was what rendered them unsuitable for that kind of work, and the defendant was negligent in furnishing that kind of an unsafe and unsuitable device or appliance for the construction of the scaffold, in the same manner as it would have been liable had it furnished weak or insufficient timber or planking or other material. Richards v. Hayes, supra.

If there was negligence on the part of plaintiff's fellow servants in not properly adjusting the jacks, such negligence on their part avails the defendant nothing. The rule on this point is stated as follows in Stringham v. Stewart, 100 N. Y 516, 3 N. E. 575:

"Co-operation of the negligence of the master and a co-servant in the production of an injury to an employé does not excuse the master from liability therefor. Fuller v. Jewett, 80 N. Y. 46, 36 Am. Rep. 575; Cone v. D., L. & W. R. R. Co., 81 N. Y. 209, 37 Am. Rep. 491; Ellis v. N. Y., L. E. & W. R. R. Co., 95 N. Y. 546. That a fellow servant may, by care and caution, operate a defective and dangerous machine so as not to produce an injury to others, does not exempt the master from his liability for an omission to perform the duty which the law imposes upon him of exercising reasonable care and prudence in furnishing safe and suitable appliances for the use of his servants. The rule which excuses the master under such circumstances presupposes that he has performed the obligations which the law imposes upon him, and that the injury occurs solely through the negligence of the co-employé."

See, also, Coppins v. New York Central & Hudson River Railroad Company, 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523; Pluckham v. American Bridge Company, 104 App. Div. 404, 93 N. Y. Supp. 748, affirmed 186 N. Y. 561, 79 N. E. 1114.

The negligence of defendant consists in placing in the hands of its servants these weak and insufficient jacks, thereby affording an opportunity for an unwise and indiscreet use thereof. It is no answer that they might have been so used as to avoid accident. That principle, if sound, would exonerate a master from liability for many accidents. If he negligently permits an unsafe implement or appliance to be used, it is no defense, in an action by a servant, that a fellow servant used it unskillfully or improperly. Concurring negligence un-

der such circumstances on the part of a fellow servant does not excuse the employer.

I think, also, that the court erroneously excluded evidence offered for the purpose of showing that thumbscrews used as in this case and under circumstances here appearing for the purpose of tightening the jacks to the connecting timbers would gradually become loose and fail to accomplish their purpose. The object of the testimony was to explain and indicate more fully the weakness of the scaffold.

It follows that the judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.