STEEL & MASONRY CONTRACTING CO. v. REILLY.

(Circuit Court of Appeals, Second Circuit. December 9, 1913.)

No. 14.

1. MASTER AND SERVANT (§ 116*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—UNSAFE PLACE TO WORK.

A plank laid loosely across steel roof trusses having a slope of about 1½ inches to the foot, which plank had a spike driven through and bent up under it at the place where it rested on one of the trusses, so as to prevent the wood from contacting fully with the truss, was not safe as a standing place for workmen while handling and placing the purlins.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

2. MASTER AND SERVANT (§ 116*)—UNSAFE PLACE TO WORK—CONSTRUCTION OF STATUTE—"SCAFFOLD."

A plank laid across steel roof trusses for workmen to walk and stand upon while performing their work is a "scaffolding," within the meaning of Labor Law N. Y. (Consol. Laws, c. 31), § 18, which provides that an employer shall not furnish or erect a scaffolding which is unsafe, unsuitable, or improper, and which is not so constructed, placed, and operated as to give proper protection to the life and limb of employés using the same; and under the decisions of the Court of Appeals of the state, if an employer fails to comply with such requirement, he is liable for a resulting injury to an employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

For other definitions, see Words and Phrases, vol. 8, p. 7795.]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Anna M. Reilly, administratrix of Edward J. Reilly, deceased, against the Steel & Masonry Contracting Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On writ of error to review a judgment entered upon the verdict of a jury for $10,500 in favor of the plaintiff for damages occasioned by the death of her husband Edward J. Reilly, due to the negligence of the defendant, in providing an insecure scaffold for the use of its employés. The judgment with interest and costs amounted to $11,105.58. The parties will be spoken of hereafter as plaintiff and defendant as they appeared in the court below.

Amos H. Stephens, of New York City (Frank Verner Johnson and William B. Davis, both of New York City, of counsel), for plaintiff in error.

Ralph Gillette and Bertrand L. Pettigrew, both of New York City, for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The plaintiff's intestate was killed by a fall from the iron framework while engaged in constructing the grand stand at the Polo Grounds in the City of New York. He was in charge of a gang of men engaged in putting into position the purlins, which are iron beams extending from truss to truss. Planking had been laid on this ironwork for the purpose of receiving the purlins, which were being brought up in slings. The roof of the grand stand slopes downward from the front to the rear, the grade being 1½ inches to a foot. A plank between 14 and 18 feet in length, 12 inches wide and 3 inches thick had been laid diagonally upon the trusses to enable the workmen to cross the space between the purlins and also to stand upon it while landing the draughts of purlins as they came up from below. As Reilly stepped upon this plank it slid downward upon the slanting truss for a distance of about 2 feet, causing him to fall from 60 to 75 feet to his death. This fatal sliding was accelerated, if not actually caused, by a spike that had been driven through the plank and bent over against the end so that at the point where the plank rested on the truss there was not a contact of wood with iron but of iron with iron. It cannot be seriously contended that such a structure was a safe one to provide for the use of the workmen at such an altitude. Indeed, the defendant's general foreman testified that with the bent spike resting on the slanting truss, the plank would have a tendency to slip. In answer to the direct question he said, "No, I don't think it was safe." We have, then, a plank laid diagonally across the slanting trusses for supporting the workmen engaged in hoisting the purlins. This plank had an iron spike bent down on its under side at the point where the plank rested upon the truss.

The action is brought under section 18 of the New York Labor Law (Consol. Laws, c. 31) which, so far as it is necessary to consider it, is as follows:

"Scaffolding for use of Employees.—A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

This law, in language too plain to be misunderstood, commanded the defendant, during the erection of the grand stand in question, not to furnish or cause to be furnished for the performance of such labor, scaffolding which was unsafe, unsuitable or improper and which was not so constructed, placed and operated as to give proper protection to the life and limb of Reilly while lawfully using the same.

Two questions are thus presented: First, was the plank unsafe? Second, was it, when placed across the trusses for the use of the workmen, a scaffold?

[1] There is no disputed question of fact regarding the plank. It is not, and cannot be, controverted that a plank with an iron spike bent on its lower side and so laid that the spike contacts with the iron of a slanting truss, causing the plank to slide down two feet when stepped on from above, is an unsafe structure. A finding by the jury to the contrary would have been set aside as having no testimony to support it.

[2] Was the structure a scaffold or scaffolding within the meaning of the act? We think it was. To hold that planks laid across trusses for the use of workmen are not scaffolding is practically to nullify the statute. All an employer will then need to do in order to escape liability will be so to build the platform on which the workmen stand that the word "scaffolding," if narrowly construed, does not describe the structure. If a scaffold ceases to be such because some part of the building is utilized for its support, the law becomes a dead letter. Any one with ingenuity enough to rest the plank of his scaffolding on the brick walls or steel floor beams can evade it.

We think the law should not be so emasculated. In construing a state statute we should be guided by the decisions of the courts of that state. Without quoting at length from these decisions, we understand them to hold that the statute positively imposes upon the employer the affirmative and imperative duty to furnish for the use of his servants safe, suitable and proper scaffolding, and if he fails to do this he is liable for an injury caused by his neglect. It is not necessary to hold that he becomes an insurer. It is enough that his failure to furnish a safe scaffolding, as required by law, makes him liable. Caddy v. Interborough Rapid T. Co., 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30; Madden v. Hughes, 185 N. Y. 466, 78 N. E. 167; Gombart v. McKay, 201 N. Y. 27, 94 N. E. 186, 42 L. R. A. (N. S.) 1234; Swenson v. Wilson & B. Mfg. Co., 102 App. Div. 477, 92 N. Y. Supp. 849, affirmed 186 N. Y. 555, 79 N. E. 1116.

In McDonald Co. v. Manns, 177 Fed. 203, 101 C. C. A. 373, this court held that loose stringers laid on angle irons over an open bin with plank placed across them, upon which the workmen were expected to stand, constituted a scaffold within the law now in question and that if such structure were unsafe the master was absolutely liable. Judge Ward says:

"We think this structure was a scaffold, within section 18 of the New York Labor Law, which the defendant 'caused to be furnished' to the plaintiff. That law makes the defendant answerable absolutely for the safety of such a scaffold. Stewart v. Ferguson, 164 N. Y. 553 [58 N. E. 662]. The accident itself indicates that the stringer which broke was insufficient, and there was

testimony to the effect that it was improperly constructed from unsuitable material."

We think that Reilly was killed by falling from an unsafe scaffolding and that the defendant is liable for the damages so occasioned.

Judgment affirmed with costs.