(77 App. Div. 361.)

## HARVEY v. McCONCHIE.

(Supreme Court, Appellate Division, First Department.　December 19, 1902.)

1. SERVANT—ASSUMPTION OF RISK—OBVIOUS DANGER—INSTRUCTIONS.

In an action by a journeyman painter against his employer, a job painter, for injuries sustained by the falling of a ladder resting on a defective support, the court's charge that: "If a painter goes upon a ladder, * * * there is an obvious risk * * * about it that he assumes, * * * if there is no latent defect. There is no testimony here * * * that there was any defect * * * which could not have been discovered, and, whatever defects there were, were perfectly obvious. The plaintiff and the defendant erected the appliance, * * * and it is for you to say whether or not, under these circumstances, it was not one of the obvious risks. * * * The plaintiff must look out for himself. He must not go into obvious risks if he does not want to assume them,"— fairly left to the jury the question as to whether the risk was an obvious one.

Hatch, J., dissenting.

Appeal from trial term, New York county.

Action by Alexander Harvey against Samuel McConchie. From a judgment in favor of defendant and an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Theodore B. Chancellor, for appellant.

Joseph Fettretch, for respondent.

INGRAHAM, J. This judgment should be affirmed. The facts are stated in the opinion of Mr. Justice HATCH. The court charged the jury that:

"The plaintiff and the defendant together erected the appliance. Each knew there were no nails in it; each knew there were no ropes tied there; and it is for you to say whether or not, under those circumstances, it was not one of the obvious risks of the employment, which was part of the contract of hiring which the plaintiff assumed. because, if the plaintiff did not assume the obvious risk of hiring, then an employer would be an insurer. * * * The plaintiff must look out for himself. He must not go into a business with obvious risks, if he does not want to assume them. * * * It is for you to consider whether or whatever risks there were, he did not see them."

I think this was correct. Assuming that there was a violation by the defendant of the duty to furnish to his employés a safe scaffold upon which to do his work, a failure to furnish such a scaffold would justify the jury in finding the defendant negligent. The ordinary rule, however, that as between employer and employé an employé assumes an obvious risk in doing the work which he is employed to do applies. The plaintiff testified that he helped to erect this scaffold; that he knew as much about it as the defendant; that he expressed doubt about its safety, and only used it when assured by the defendant that it was safe. The defendant denied that he gave such assurance, and the question whether such assurance was given was submitted to the jury, who have found a verdict for the defendant. While this was a question for the jury, I think it was left to them by a charge that was

free from error, and that their verdict should not be disturbed. The plaintiff had assisted in the construction of this scaffold; was familiar with the details of its construction; and, if he used it with full knowledge of its condition, without any assurance from the defendant that it was safe, or a proper one under the circumstances, the jury were justified in finding that the plaintiff had assumed the risk in the use of the appliance as it existed when he used it. I do not find that the court charged that whatever defects existed in this appliance were perfectly obvious, but that question was, I think, fairly left to the jury.

The judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN and McLAUGHLIN, JJ., concur.

HATCH, J. (dissenting). This action was brought to recover damages for personal injuries claimed to have been sustained by the plaintiff through the negligent act of the defendant. It appeared upon the trial that the plaintiff was a journeyman painter in the employ of the defendant, who was a boss painter. On the day of the accident the parties were engaged in painting a house, of which the defendant was part owner, in the city of Yonkers. The defendant was personally present during the performance of the work, and supervised the same. He directed the plaintiff to paint a portion of the side of the house above the veranda constructed upon one side. For the purpose of enabling the plaintiff to perform this work, two boards were laid upon the sloping roof of the veranda, separated at a distance of 10 or 12 feet. At the end of these boards on the under side was nailed a cleat, which fitted into the gutter, preventing their sliding from the roof or giving away. Upon the top of these boards were nailed several cleats at intervals of about a foot apart. Across the boards was placed a plank, which rested against one of the cleats nailed to the boards on either end. Against this plank was rested a ladder, upon which the defendant was to stand in painting the house. Neither the boards upon which were fastened the cleats nor the cross-plank were nailed or otherwise fastened, nor were they otherwise held in place, except by the cleats which rested in the gutter. After this structure was placed in position, the plaintiff demurred to going upon the ladder, and thereupon the defendant procured and placed between the horizontal plank and the ladder a piece of fence rail. This brought the foot of the ladder to rest against this piece of rail. The plaintiff again expressed doubt as to the safety of the structure, took hold of the ladder, and made a slight test of it. The defendant then said to the plaintiff: "'You ain't afraid, are you?' I say, 'No, but I don't want to go down.' He says, 'That is all right; it has been done that way before.'" Plaintiff then testified: "With his assurance I went up, and had not been working but a few seconds on it, when it gave way,—the whole thing gave way,—and precipitated me to the roof." The court held that the evidence in the case presented a question for determination by the jury, and we think that such conclusion was correct. We are, however, of the opinion that the court committed an error in the submission of the case which calls for a reversal of this

judgment. In charging the jury the court stated that under the rules which exist between master and servant in the course of employment the latter assumes obvious risks, and may not be heard in complaint if therefrom the servant receives injuries in the course of his employment; and, applying the rule to the facts of the particular case, the court stated:

"So, if a painter goes upon a ladder to paint, there is an obvious risk about it that he assumes,—for instance, in a structure of this kind,—if there is no latent defect in it. There is no testimony here that anything broke, or that there was any defect in any of the material which could not have been discovered, and whatever defects there were were perfectly obvious. The plaintiff and the defendant together erected the appliance. Each knew there were no nails in it; each knew there were no ropes tied there; and it is for you to say whether or not, under those circumstances, it was not one of the obvious risks of the employment, which was part of the contract of hiring, because if the plaintiff did not assume the obvious risks of hiring, then an employer would be an insurer; that is to say, he would be responsible in every event for an accident to an employé. That is not the law. Perhaps you think it ought to be the law, but it is not the law. The plaintiff must look out for himself. He must not go into a business with obvious risks if he does not want to assume them."

To this part of the charge the plaintiff excepted.

By the provisions of section 18 of the labor law it is made the absolute duty of the master not to furnish an unsafe or unsuitable structure of this character. Under this section it has been held that the structure is to be regarded as a place furnished by the master for the servant to do his work; that a duty is devolved upon the master not to permit this place to be unsafe, unsuitable, or improper; and that in the erection of the structure by the servant he acts as the master himself. Stewart v. Ferguson, 34 App. Div. 515, 54 N. Y. Supp. 615. This rule was reiterated in Stewart v. Ferguson, 52 App. Div. 317, 65 N. Y. Supp. 149, and the doctrine to the fullest extent was laid down by the court of appeals in the affirmance of the judgment in that case. Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662. It is therein said:

"Its fall, in the absence of evidence of other producing cause, points to the omission of the duty enjoined by the statute upon the defendant to the plaintiff in its construction, and points to it with that reasonable certainty which usually tends to produce conviction in the mind in tracing events back to their causes, and thus creates a presumption. It is circumstantial evidence, and, if it does convince the jury, it justified their verdict."

It is clear, therefore, that the fall of this structure raised the presumption that the master had been guilty of negligence in failing to perform the duty which the statute imposed upon him, and, in the absence of exculpating testimony, such presumption would justify a verdict in favor of the plaintiff. The defendant is not liable, however, if the defect was known to the plaintiff when he made use of the structure. If he knew that it was unsafe, unsuitable, or improper, and made use of it with such knowledge, then he assumes the risk incident to the use, even though the defendant violated the statutory duty. McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193. The burden, however, of showing that the servant knew, and therefore assumed, the risk, rests upon the master, and furnishes a question of fact for the jury. Dowd v. Railway Co., 170 N. Y. 459, 63 N. E. 541.

The court charged that whatever defects existed were perfectly obvious, and, if he was correct upon this subject, then it would seem to follow that the plaintiff was chargeable with knowledge of them; and, if this be so, then there was nothing to submit to the jury. The law, however, assumes that the master has complete knowledge upon the subject, and when he gives assurance of safety the servant has a right to rely thereon, unless it clearly appears that the servant's knowledge was in all material respects equal to the knowledge of the master. Chadwick v. Brewsher (Sup.) 15 N. Y. Supp. 598. We do not think it can be said as matter of law, under the rule established by the statute, that the defects of this structure were perfectly obvious. On the contrary, it does not appear in the record what the particular defect was which caused this structure to fall. All the proof there is on that subject is that the structure fell a short time after the plaintiff went upon it, and while he was engaged in reaching out to one side applying the paint to the building. Whether it was due to the insecurity of the cleats, or either of them, resting in the gutter, or from the instability of the horizontal plank, or from the sliding of the ladder under the piece of fence rail, is not known, so far as the record of this case is concerned. In the absence of proof as to what occasioned the structure to fall, and of knowledge upon that subject by any person, it is quite difficult to see how it can be said that the risk assumed by the plaintiff in going upon the ladder was perfectly obvious, when it is impossible to ascertain, after the accident happened, what the particular weakness of the structure was. The statute imposed the absolute duty upon the master to furnish a structure that was safe. After it was so furnished, he assured the plaintiff that it was safe, and had been used in like manner before; and, acting upon such assurance, the plaintiff entered upon it in the course of his employment. It fell, and what caused it to fall does not appear. Manifestly, therefore, the charge to the jury that the defect which caused it to fall was perfectly obvious was error.

The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.