MARGARET GOMBERT, as Administratrix of the Estate of
PETER B. GOMBERT, Deceased, Appellant, *v.* PETER
McKAY, Respondent.

**Master and servant — action against master by servant injured by
fall of scaffold — when master may invoke defense of assumption
of risk, under provisions of Labor Law.**

Under sections 18 and 19 of the Labor Law (Consol. Laws, ch. 31), the
employer is left free to invoke the defense of assumption of risk or con-
tributory negligence on the part of the employee although injured
while acting as his agent or vice-principal in constructing the appliance,
or any other defense permitted by the common law and not inconsistent
with the statute.

Where a man of extended experience, as to the uses to which a scaffold
was to be put, approved the plan devised by his fellow-workmen there-
for, assisted in constructing the support in accordance therewith, and
knew fully and accurately the materials and manner of construction, the
right of his personal representative to recover for his death occasioned by
a defect therein is defeated by such intestate's assumption of the risk.
*Gombert* v. *McKay*, 134 App. Div. 970, affirmed.

(Argued January 10, 1911; decided February 7, 1911.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
December 1, 1909, affirming a judgment in favor of defend-
ant entered upon a verdict directed by the court and an order
denying a motion for a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Charles La Rue* for appellant. This was a scaffolding for
which the employer was responsible under sections 18 and 20
of chapter 415 of the Laws of 1897, known as the Labor Law.
(*Stewart* v. *Ferguson,* 164 N. Y. 553; *Cuddy* v. *I. R. T.
Co.,* 125 App. Div. 681; 195 N. Y. 415; *Jenks* v. *Thompson,*
179 N. Y. 26; *Gruner* v. *Texas Co.,* 133 App. Div. 413;
*Welk* v. *Jackson,* 98 App. Div. 247; *Haggblad* v. *B. H.
R. R. Co.,* 117 App. Div. 838; *Convey* v. *Finn,* 130 App.
Div. 440; *Nixon* v. *Thompson-Starrett Co.,* 131 App. Div.
614; *Cummings* v. *Kenny,* 97 App. Div. 114; *McLaughlin*

v. *Eidlitz,* 50 App. Div. 518.) The questions of contributory negligence and assumption of risk were for the jury. (*Anderson* v. *Milliken,* 123 App. Div. 614; *Warren* v. *Post & McCord,* 128 App. Div. 572; *Tierney* v. *Vunck,* 97 App. Div. 1; *Williams* v. *Roblin,* 94 App. Div. 177; *Harvey* v. *McConchie,* 77 App. Div. 361; 177 N. Y 569.)

*Frank V. Johnson* and *E. Clyde Sherwood* for respondent. Section 18 of the Labor Law has no application to a situation created by the workmen themselves without the knowledge of the employer, especially when the condition complained of was created with materials obtained and used by such workmen unknown to the employer and without any means of knowledge on his part. (*Wingert* v. *Krakauer,* 92 App. Div. 223; *Rotondo* v. *Smyth,* 92 App. Div. 153; *Williams* v. *First Nat. Bank of Utica,* 118 App. Div. 555; 121 App. Div. 929; 195 N. Y. 576; *Stewart* v. *Ferguson,* 164 N. Y. 553.)

COLLIN, J. The plaintiff brought the action to recover damages for the alleged negligence of defendant, by which the death of her intestate was caused. The relation between the intestate and the defendant was employee and employer. On November 22, 1906, the intestate, with three co-employees, began the job of painting the exterior woodwork of the building No. 23 West Seventeenth street, New York city. They, having caused to be taken there the swinging or portable scaffold with the tackle, pulley blocks and falls ordinarily used in painting the exteriors of buildings, arrived at about nine o'clock in the forenoon and planned to commence the work at the second story. Two of them, other than the intestate, after investigation decided that the best way to support the scaffold was to hang it upon planks to be projected out and resting upon the sills of the third-story windows and made stationary by tying them to an interior fixture. About one foot below the window sills and extending along the building and from it outwardly two or three feet was a coping over which the planks were to reach. In order that each of the planks from the widow sill outward

would be level, they decided to rest it upon a support of the requisite height, placed upon and near to the outer edge of the coping. They obtained at a nearby shop and brought to the building the planks and hammer and nails, and at this point participation by the intestate in the construction of the support for the scaffold began. He expressed his idea of the proper way of building the support, and in return was shown the intended and planned method and in response said, "it is all right." Each support to be placed upon the coping was then made by the fellow-workmen of the intestate by sawing and nailing together a piece of plank and boards obtained from the shop, after which the intestate from the inside of the building held it as it had been placed upon the coping while another from the outside nailed to the top thereof the plank, and then tied the plank to something within the building. The scaffold was then hung upon the planks by means of the hooks in the pulley blocks, was pulled up to the right place and upon it stepped the intestate and a fellow-employee, who were just ready for work, when the support broke down from under one of the planks and the end of the scaffold dropping suddenly the intestate fell to the street and received the injuries which caused his death. A part of the work of the intestate as an employee of the defendant, through the two years or more last prior to his death, had been to assist in rigging the painters' scaffold in position on the outside of the buildings to be painted by himself and his fellow-workmen and, as they painted from place to place, in raising or lowering the scaffold up and down the side of the building by means of the pulley blocks and the ropes and, when a part of the building covered by the scaffold was painted, in shifting the scaffold to and rigging it in another place.

Inasmuch as the supports for the scaffold were planned and constructed by the intestate and his co-employees, the plaintiff could not, under the rules of the common law, have a recovery against the defendant. (*Butler* v. *Townsend*, 126 N. Y. 105; *Kimmer* v. *Weber*, 151 N. Y. 417; *Golden* v. *Sieghardt*, 33 App. Div. 161.) The counsel for the plaintiff, while conced-

ing thus much, argues that the provisions of sections 18 and 19 of the Labor Law abrogated or modified those rules in such wise and extent that they do not bar to plaintiff a right to maintain the action.

The provisions of those sections, in so far as material to this discussion, are : " A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed." (Section 18.) "All swinging and stationary scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom or placed thereon, when in use, and not more than four men shall be allowed on any swinging scaffolding at one time." (Section 19.) The statute broadens in a substantial and important degree the liability of the class of employers designated by it. It, in terms, absolutely forbids those employers to furnish or operate, or cause to be furnished or operated, any apparatus therein mentioned of the character and quality described by it. It, in its effect, provides that any employer who either personally, or by another, furnishes for the performance of any named labor a forbidden article shall be responsible therefor. The duty of the employer created by it is personal, incapable of delegation and unaffected by caution and discrimination in selecting employees for their prudence and competency. (*Stewart* v. *Ferguson*, 164 N. Y. 553 ; *Madden* v. *Hughes*, 185 N. Y. 466 ; *Caddy* v. *Interborough Rap. Trans. Co.*, 195 N. Y. 415.)

The common-law doctrines, in so far as they oppose the provisions of the statute, are superseded, but, in so far as they do not oppose them, remain and must be applied. The statute must be given a fair and reasonable meaning which will neither extend it beyond nor withdraw it from its intended

effect. Although it imposes upon the employers personal responsibility and a positive prohibition, it does not, in terms, impose absolute and irresistible liability from their default or disobedience; nor is the liability consequent upon the negligent violation of a duty created by a statute necessarily superior to the relevant common-law defenses thereto. (*Knisley* v. *Pratt*, 148 N. Y. 372; *Jenks* v. *Thompson*, 179 N. Y. 20; *Marshall* v. *Norcross*, 191 Mass. 568; *Sitts* v. *Waiontha Knitting Co.*, 94 App. Div. 38; *White* v. *Wittemann Lith. Co.*, 131 N. Y. 631.) The employer is precluded from those defenses when the language of the statute evinces that the legislature thus intended, and not otherwise. Under the statute in question the employer is left free to invoke the defense of assumption of risk or contributory negligence on the part of the employee although injured while acting as his agent or vice-principal in constructing the appliance, or any other defense permitted by the common law and not inconsistent with the statute.

The uncontradicted evidence compels to the conclusion that the intestate assumed the risks attendant upon the construction and placing of the support for the scaffold of which it was a part. He deliberately approved the plan devised by his fellow-workmen therefor, assisted in constructing the support in accordance therewith, and knew fully and accurately the materials and manner of construction. He was intelligent, because of his extended experience, as to the uses to which the scaffold was to be put, the strain to which it would be subjected and the risks connected with a construction insufficient in strength of materials or defective in manner. At no point in making the support or being upon the scaffold did he act under the direction of the defendant, but of his own volition. Plaintiff's right to recover is defeated by the intestate's assumption of the risks. (*Harvey* v. *McConchie*, 77 App. Div. 361; affd., 177 N. Y. 569.)

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.

Judgment affirmed.